Anne R. Traum, Esq.
NV Bar #7939
Thomas & Mack Legal Clinic
PO Box 71075
Las Vegas, Nevada 89170
(702) 895-2080
anne.traum@unlv.edu

Attorney for Juan Rodriguez

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No: 2:09-cr-00262-JCM-RJJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **UNOPPOSED MOTION** |
| | ) | **TO INCLUDE** |
| vs. | ) | **DEFENDANT'S EXHIBIT 501** |
| | ) | **AND GOVERNMENT'S** |
| JUAN RODRIGUEZ, | ) | **TRIAL MEMORANDUM** |
| | ) | **IN THE PACER RECORD** AND ORDER |
| Defendant, | ) | |
| _____ | ) | |

Defendant Juan Rodriguez, through Counsel Anne R. Traum, Esq., Thomas and Mack Legal Clinic, requests that this Court correct the trial record by adding Defendant's Exhibit 501 and the Government's Trial Memorandum to the Pacer Record. Pursuant to FRAP 10(e), the district court may correct or modify the record in the event "anything material to either party is omitted from ... the record by error or accident" "before or after the record has been forwarded." FRAP 10(e)(2)(B).

Although Defendant's Exhibit 501 was admitted at trial, it is not referenced on PACER. Similarly, the Government's Trial Memorandum was filed in open court on December 1, 2010, but also is not referenced on PACER. Both of these documents will be

Thomas and Mack Legal Clinic
William S. Boyd School of Law
P.O. Box 71075, Las Vegas, Nevada 89170-1075
Telephone: (702) 895-2080 Facsimile: (702) 895-2081

included in the Excerpts of Record and filed with Defendant's Opening Brief, which is due on December 2, 2011. *See* Ninth Circuit Rule 30-1.1(a-b) (requiring excerpts of the records in counseled appeals); FRAP 10(a)(1-3) (requiring the excerpts to contain original papers and exhibits filed in district court), Ninth Circuit Rule 10-2(b) (same).

1. Defendant's Exhibit 501 is an 8.5" x 11" print of a photograph that was admitted to evidence at trial on December 7, 2010. This Court has the original marked exhibit.

2. The Government's Trial Memorandum was filed in court on December 1, 2010, and is attached to this motion as Exhibit A.

On November 16, 2011, undersigned counsel contacted Assistant United States Attorney Bradley Giles, who stated that he does not oppose this motion.

Accordingly, Defendant Rodriguez asks this Court to grant this motion and include in the PACER record Defendant's Exhibit 501 and the Government's Trial Memorandum, attached herein as Exhibit A.

Respectfully submitted this 17th day of November, 2011.

UNLV WILLIAM S. BOYD SCHOOL OF LAW
THOMAS & MACK LEGAL CLINIC

By:     */s/ Anne R. Traum*
ANNE R. TRAUM
Attorney for Juan Rodriguez

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE,
DATED:  November 22, 2011

**Thomas and Mack Legal Clinic**
**William S. Boyd School of Law**
P.O. Box 71075, Las Vegas, Nevada 89170-1075
Telephone: (702) 895-2080 Facsimile: (702) 895-2081

2

1

2                           **CERTIFICATE OF ELECTRONIC SERVICE**

3          The undersigned hereby certifies that she is an employee of the University of

4

5   Nevada, Las Vegas, William S. Boyd School of Law, and is a person of such age and

6   discretion as to be competent to serve papers.

7          That on November 17, 2011, she served an electronic copy of the above and

8   foregoing UNOPPOSED MOTION TO INCLUDE DEFENDANT'S EXHIBIT 501 AND

9   THE GOVERNMENT'S TRIAL MEMORANDUM IN THE PACER RECORD by

10  electronic service (ECF) to the person named below:

11

12

13         Daniel G. Bogden
           United States Attorney
14         Robert Ellman
           Bradley Giles
15         Assistant United States Attorneys
           333 Las Vegas Blvd. So., 5th Floor
16         Las Vegas, Nevada 89101

17

18

19

20              ___/s/ Anne R. Traum_____
                 Employee of the University of Las Vegas,
21                 Williams S. Boyd School of Law,
                    Thomas & Mack Legal Clinic

22

23

24

25

26

27

28

**Thomas and Mack Legal Clinic**
**William S. Boyd School of Law**
P.O. Box 71075, Las Vegas, Nevada  89170-1075
Telephone: (702) 895-2080 Facsimile: (702) 895-2081

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Thomas and Mack Legal Clinic**
**William S. Boyd School of Law**
P.O. Box 71075, Las Vegas, Nevada  89170-1075
Telephone: (702) 895-2080 Facsimile: (702) 895-2081

# Exhibit A

1  DANIEL G. BOGDEN
   United States Attorney
2  BRADLEY W. GILES
   Assistant Unites States Attorney
3  333 Las Vegas Blvd. South, Suite 500
   Las Vegas, Nevada  89101
4

5

6                 **UNITED STATES DISTRICT COURT**

7                      **DISTRICT OF NEVADA**

8                              **-oOo-**

9
   UNITED STATES OF AMERICA,          )   2: 09-cr-0262-JCM-RJJ
10                                     )
                  Plaintiff,           )   **GOVERNMENT'S TRIAL**
11                                     )   **MEMORANDUM**
        vs.                            )
12                                     )
   JUAN RODRIGUEZ,                     )
13     aka Juan Rodriguez-Lopez,       )
                                       )
14                                     )
                  Defendants.          )
15

16        COMES NOW the United States of America, by and through DANIEL G. BOGDEN,

17  United States Attorney, Bradley W. Giles, Assistant United States Attorney, District of Nevada, and

18  submits the following trial memorandum pursuant to the Court's Order regarding pretrial procedure.

19                                 **I.**

20                      **STATEMENT OF THE CASE**

21        On December 1, 2010, a Federal Grand Jury returned a Fourth Superseding Indictment against

22  Defendant Juan Rodriguez, aka Juan Rodriguiz-Lopez.[1]  The Defendant is charged with the following

23  violations: Count 1:  Conspiracy to Distribute Methamphetamine, in violation of 21 United States Code

24  (U.S.C.) § 846; Count 2:  Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in

25  violation of Title 18, U.S.C., Sections 924(c)(1)(A)(I), and Count 3:  Felon in Possession of a Firearm,

26  in violation of Title 18, U.S.C., Sections 922(g)(1) and 924(a)(2).  The Fourth Superseding Indictment

27  _____

28        [1] Prior indictments contained additional co-defendants whose cases have now been resolved.

                                 1

1   also contains forfeiture allegations referencing the firearm and ammunition seized from Defendant

2   Rodriguez in connection with the investigation. Defendant will need to be arraigned on the new

3   superseding indictment prior to the commencement of trial.

## II.

## STATEMENT OF SUBSTANTIVE FACTS

6          On June 3, 2009, DEA Special Agents debriefed a DEA Confidential Source (C/S) concerning

7   a methamphetamine trafficker from California named "Alfonso." According to the C/S, Alfonso was

8   willing to transport multi-pound quantities of methamphetamine to Clark County, Nevada for the

9   purpose of selling the methamphetamine to the C/S for $20,000.00 per pound.

10         Between June 3, 2009 and June 16, 2009, agents recorded three consensually-monitored

11  telephone conversations between the C/S and Alfonso. During these telephone conversations, the C/S

12  and Alfonso attempted to work out the details of a possible methamphetamine transaction. On June 16,

13  2009, during the final recorded conversation, Alfonso agreed to transport a multi-pound load of

14  methamphetamine to Las Vegas and then sell it to the C/S on June 18, 2009.

15         On June 18, 2009, at approximately 7:30 p.m., investigators established surveillance in the area

16  of the Primm Valley Resort and Casino on the Nevada side of the California/Nevada border in

17  preparation for a meeting between the C/S, an undercover DEA Task Force Officer (U/C) and Alfonso.

18         At approximately 7:49 p.m., a blue Chevrolet S-10 registered to Defendant Adrian Fuentes-

19  Garcia arrived at a Chevron gas station within the surveillance area. The blue S-10 was occupied by two

20  individuals subsequently identified as Defendants Alfonso Rivera-Avalos and Adrian Fuentes-Garcia.

21  The S-10 then exited the Chevron gas station and drove over to where the U/C and C/S were parked.

22  Rivera-Avalos was driving and Fuentes, the registered owner of the S-10, was seated in the passenger

23  seat. The C/S later confirmed that Alfonso Rivera-Avalos was the Alfonso who had been participating

24  in the monitored telephone conversations.

25         Rivera-Avalos and Fuentes then engaged in conversation with the U/C and C/S. Both Rivera-

26  Avalos and Fuentes pointed out a red 2008 Ford Explorer (later determined to be registered to Defendant

27  Jose Luis Rubio-Rodriguez) which was parked in the vicinity of the gas station. They identified the

28

1    Explorer as the load vehicle. In addition, Fuentes told the U/C that no special tools would be required
2    to open the compartment containing the methamphetamine. This would later prove to be correct.

3         As the meeting was occurring, agents observed an older Mexican female, (later identified as
4    Defendant Adelina Arias) watching from the Chevron gas station. When the meeting concluded, Arias
5    joined an individual who was subsequently identified as the registered owner of the Explorer, Defendant
6    Jose Luis Rubio-Rodriguez. Arias got into the driver's seat of the vehicle and Rubio took his place in
7    the front passenger seat. Rubio's uncharged juvenile son also got into the back of the red Ford Explorer.

8         The U/C informed additional surveillance agents that he had made arrangements such that the
9    blue Chevrolet S-10 and the red Ford Explorer would be following him to Las Vegas. However, as the
10   convoy left the area, investigators also observed a black 2005 Toyota Tundra that appeared to be
11   following the other three vehicles. The driver and sole occupant of the Tundra was later identified as
12   Juan Rodriguez. He is also the registered owner.

13        While heading north on I-15 towards Las Vegas, the U/C vehicle, the blue S-10, the red Explorer,
14   and the black Tundra drove one behind the other in a tight formation. The U/C vehicle was the lead car
15   in the convoy. When it changed lanes, the other three vehicles followed in quick succession. Agents
16   eventually conducted traffic stops on the blue Chevrolet S-10, the red Ford Explorer, and the black
17   Toyota Tundra.

18        The red Explorer (driven by Defendant Arias) stopped without incident. After receiving an alert
19   from a Nevada Highway Patrol drug detection canine, Troopers recovered approximately 2,514.2 gross
20   grams of methamphetamine in five clear plastic zip-lock bags hidden behind the back seat. As was
21   earlier noted by Defendant Fuentes, no special tools were required to get to the packages of suspected
22   methamphetamine.

23        The blue S-10 was stopped without incident and Defendants Rivera-Avalos and Fuentes were
24   contacted. Inside their vehicle, agents located the cellular telephone that the C/S was utilizing to contact
25   Rivera-Avalos.

26        After seeing both the S-10 and the Explorer get pulled over by marked units, Rodriguez (the
27   driver of the black Tundra) departed the area at high speed, changing his speed from approximately 5
28   miles per hour under the limit to in excess of 90 miles per hour. Following an initial pursuit, Rodriguez

3

1  eventually pulled over. As an LVMPD Detective approached the vehicle, he heard a loud thump inside

2  the passenger compartment. Subsequent investigation revealed that Rodriguez threw a loaded Cal. .9

3  (.380) Beretta handgun (contained in a leather holster) to the passenger side of the vehicle as the officers

4  were approaching him. The weapon was recovered on the floor of the passenger compartment by the

5  passenger door. The handgun was determined to be a loaded Beretta Cal. .9 (.380) semi-automatic

6  pistol, bearing serial number D32470Y.

7      All five adults were arrested. (The juvenile, Rubio-Rodiguez's son, was released for

8  deportation.) All five Defendants waived their *Miranda* rights and consented to interviews. During their

9  interviews, Rivera-Avalos and Fuentes claimed to be Mexican nationals who were residing illegally in

10 the United States. Both stated that they were in Las Vegas to party and claimed to know nothing about

11 a planned methamphetamine transaction.

12     Both the registered owner of the Explorer (Rubio) and the driver of the Explorer (Arias) claimed

13 to know nothing about the methamphetamine which was discovered inside their vehicle. Rubio stated

14 that Arias had invited him to Las Vegas to party, while Arias claimed that Rubio invited her to party in

15 Las Vegas. Rubio admitted to being a Mexican national illegally residing within the United States.

16     Rodriguez claimed that he had come to Las Vegas to party with Rubio and Arias. He also stated

17 that he had forgotten about the pistol that was in his vehicle (although he earlier told agents that he

18 planned to buy extra magazines for the pistol while in Las Vegas). Finally, Rodriguez falsely told agents

19 that he had no prior arrests. Despite the fact that all five defendants claimed to have arrived in Las

20 Vegas to party, not one was carrying any luggage containing toiletries or a change of clothes.

21     Investigators conducted a presumptive field test on the methamphetamine which was discovered

22 inside the red Ford Explorer. The sample tested positive for the presence of methamphetamine. This

23 was later confirmed by laboratory analysis which demonstrates that the seized narcotics had a purity

24 level of 91% and thus contain 2,227.67 grams of pure methamphetamine. An interstate nexus report

25 prepared by a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agent confirms that the

26 Beretta firearm was manufactured outside the state of Nevada, therefore it has traveled in or affected

27 interstate commerce.

28 . . .

4

## III.

## DISCOVERY

The United States has complied with its discovery obligations. To date, aside from a list of three potential witnesses, the defendant has not provided reciprocal discovery (if any). The case is proceeding according to a joint discovery agreement. Undersigned counsel has contacted the defense to request notification of any outstanding discovery matters; to date, aside from the release of Grand Jury Transcripts (which requires an Order from this Court) and a pending meeting with defense counsel to discuss a phone contact summary chart, undersigned counsel is not aware of any outstanding discovery requests. At calendar call, the Government will request that this Court Order the release of the Grand Jury transcripts.

## IV.

## EVIDENTIARY ISSUES

At trial, the United States will seek to introduce the following materials into evidence that could potentially draw objections from the defense:

### A.    Stipulations

The Government's understanding is that the defendant does not have any objection to the translations of the undercover communications which were previously released in discovery.

The parties have also stipulated that they will make a joint recommendation to this Court that the Felon in Possession charge (Count 3) should be bifurcated from the case-in-chief due to the potential prejudice to the Defendant. However, immediately following jury deliberations and the return of a verdict on the remaining counts, it would be appropriate to have the same jury (following a brief presentation of additional evidence) deliberate with regard to Count 3. *See e.g., United States v. Nguyen,* 88 F.3d 812 (9th Cir. 1996).

In exchange for the joint recommendation that the "Felon in Possession" count be bifurcated, Defendant Rodriguez has indicated that he is willing to enter into a stipulation with regard to his prior felony conviction.

Additionally, it is anticipated that the defendant will stipulate to the drug test results and chain of custody regarding the seized methamphetamine.

5

## B. Chain of Custody

At trial, the Government will move to admit several items of physical evidence. To be admitted into evidence, a physical exhibit must be in substantially the same condition as when the crime was committed. This determination is to be made by the trial judge and will not be overturned except for clear abuse of discretion. Factors the court may consider in making this determination include the nature of the item, the circumstances surrounding its preservation, and the likelihood of intermeddlers having tampered with it. *See Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960).

The Government need not establish all links in the chain of custody of an item or call all persons who were in a position to come into contact with it. *See Gallego*, 276 F.2d at 917. Alleged gaps in the chain of custody go to the weight of the evidence rather than to its admissibility. *United States v. Matta-Ballasteros*, 71 F.3d 754 (9th Cir. 1995).

## C. Photographs and Video

The Government will also move to admit several crime scene photographs which were taken on the morning of the defendants' arrest. Photographs are admissible within the discretion of the Court when the picture is shown to be a correct representation of the site, person, or object depicted. *See United States v. Oaxaca*, 569 F.2d 518 (9th Cir. 1978), *cert. denied*, 439 U.S. 926 (1978). With regard to each of the photographs, the Government will lay a foundation to establish that it depicts a correct likeness of the scene that it purports to represent. *United States v. Stearns*, 550 F.2d 1167, 1168-69 (9th Cir. 1977). A witness or party can verify the accuracy of the photographs; it is not necessary for the person who took the picture to provide the evidentiary foundation. *United States v. Henderson*, 68 F.3d 323, 324 (9th Cir. 1995).

## D. Expert Testimony

The Government has given notice that it intends to introduce expert testimony at trial [Docket #'s 93 and 57]. The expert witnesses previously-endorsed by the Government include:

1) **Thomas Chittum, III, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives:**

Absent stipulation, the Government will call Resident Agent in Charge (RAC) Thomas L. Chittum of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) to testify with

6

regard to the interstate nexus examination which was completed on the firearm seized in connection with the investigation of the above-captioned case. An interstate nexus report was previously completed by ATF S/A Chad M. Key (released in discovery as Bates #113). It is expected that Mr. Chittum will testify that he completed an independent Interstate Nexus Examination and a Firearms Trace in reference to the firearm seized in connection with this case and that his conclusions were in concurrence with those listed within S/A Key's report. Specifically, he is expected to testify, *inter alia,* that the firearm was manufactured outside the state of Nevada and it had therefore traveled in or affected interstate commerce. He is also expected to testify regarding: (a) the methodologies he employed in analyzing the firearm, (b) chain of custody related to those procedures, and (c) any other area that is within the witness' area of expertise which is helpful to the jury's comprehension of the relevant issues in this case. S/A Chittum will also testify regarding any observations which were made during the testing process.

Additionally, S/A Chittum will testify with regard to his training and experience reference the relationship between firearms and drug trafficking. Such testimony will include an explanation of: (a) drug trafficking structures and organizations, including the modus operandi of narcotics distribution, transportation and storage; (b) the custom and practice of drug dealers and transportation cells during drug transactions, including their use of intermediaries, counter-surveillance techniques and armed personnel to protect their loads; (c) why drug traffickers commonly possess firearms, and how those firearms facilitate or further drug trafficking crimes; (d) quantities of narcotics (including the difference between a quantity intended for personal use and a quantity intended for further distribution to other purchasers); (e) the relative value of narcotics (including the value of quantities intended for personal use and quantities intended for further distribution), and specifically, the wholesale and retail or street value of methamphetamine in Las Vegas, Nevada; (f) how methamphetamine is consumed and what paraphernalia are associated with drug use and drug distribution; and (g) and other areas that are within the witness' area of expertise and are helpful to the jury's comprehension of the relevant issues in this case.

1          Additionally, Agent Chittum will also testify that, to a reasonable degree of certainty, the

2    amount of methamphetamine involved in this case is consistent with an amount that is intended

3    for distribution to others.  A copy of Agent Chittum's resume was previously released as an

4    attachment to the Government's Notice of Expert Testimony, previously filed on April 22, 2010

5    [Docket #93].

6    2)    **Khushboo Narechania, Forensic Scientist II, LVMPD Forensic Laboratory**:

7          Absent stipulation, the Government will call Forensic Scientist Khushboo Narechania with the

8    Las Vegas Metropolitan Police Department (LVMPD) Forensic Laboratory, to testify with regard to her

9    report that she processed and tested the methamphetamine which was seized and submitted in reference

10    to this case.  She will testify regarding: (a) the identity of the narcotics seized in the present case, (b) the

11    weights and purity levels of those narcotics, (c) the scientific methodologies she employed in analyzing

12    the substance(s) seized in the present case, (d) chain of custody related to those procedures, and (e) any

13    other area that is within the witness' area of expertise and is helpful to the jury's comprehension of the

14    relevant issues in this case.  She will also testify regarding any observations which were made during

15    the testing process. The chemist's report has been released in discovery.  Additionally her qualifications

16    to testify as an expert witness were previously released.

17          Federal Rule of Evidence 702 permits expert testimony when it "will assist the trier of fact to

18    understand the evidence."  Copies of the reports related to the above-captioned expert testimony, and

19    copies of a curriculum vitae for each witness has been released in discovery.

20        **E.**    **Co-conspirator Statements**

21          The United States gives notice of its intent to introduce against the defendant statements made

22    by co-conspirators, including "Alex" LNU, and others.  *See* Fed. R. Evid. 801(d)(2)(E); *see also*

23    *Bourjaily v. United States*, 483 U.S. 171, 181-184 (1987) (statements made by party's co-conspirator

24    during course of and in furtherance of criminal conspiracy are not hearsay and do not violate

25    Confrontation Clause).  Co-conspirator statements are not "testimonial," so they do not implicate the

26    restrictions of *Crawford v. Washington*, 541 U.S. 36 (2004). *United States v. Allen*, 425 F.3d 1231 (9th

27    Cir. 2005).  These co-conspirator statements consist of the recorded phone conversation that has already

28    been provided to the defendants.

**F.    Improper Use of Character Evidence at Trial**

Defendant Rodriguez has informed the Government of his intent to call three of his children to testify at trial. Defense counsel states that he intends to call these witnesses to testify with regard to the Defendant's work history, financial status and their relationships with him. Defendant denies that such evidence constitutes "character evidence"; the Government objects to the admission of any such evidence.

Pursuant to Fed. R. Crim. P. 404(a), with limited exceptions, "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." While those exceptions include evidence of a pertinent character trait offered by an accused, *see*, Fed. R. Crim. P. 404(a)(1), courts have declined to admit testimony relating to a defendant's propensity to engage in large-scale drug dealing. *See e.g., United States v. Diaz*, 961 F.2d 1417, 1419-20 (9h Cir. 1992) (holding that while questioning reference a defendant's propensity to engage in criminal activity is a proper inquiry into a general character trait, questioning reference propensity to engage in large-scale drug trafficking is not an appropriate area of inquiry). The Government therefore objects to the improper of character evidence within the trial of this case and hereby moves *in limine* to prevent reference to any such material in opening statements. Furthermore, if Defendant Rodriguez does elect to offer evidence at trial related to his law-abiding character, the Government reserves its right to question the character witnesses regarding Defendant's prior felony conviction for alien smuggling.

**G.    Impeachment with Prior Felony Conviction**

On October 8, 2010, the Government provided written notice, pursuant to Federal Rules of Evidence 609(a)(1) and 609(b) that the Government intends to impeach the defendant with his prior felony conviction in the event that he testifies at trial. Specifically, the Defendant was convicted on or about October 31, 1984 in U.S. District Court for Eastern District of California at Fresno, case number CR-F-82-184 MDC, of a crime punishable by imprisonment for a term exceeding one year, to wit: Transporting Illegal Aliens in violation of Title 8, United States Code Section 1324(a)(2). As a result of this conviction, the Defendant was sentenced to 2 years incarceration with credit for time served with

1    the execution of that sentence suspended upon the service of two years informal probation. A certified

2    copy of the Defendant's prior conviction has previously been released in discovery.

3         The Defendant's prior felony conviction is admissible as proper impeachment should the

4    Defendant choose to testify at trial. Federal Rule of Evidence 609(a)(1) states:

5         For the purpose of attacking the credibility of a witness, (1) evidence that a witness
     other than an accused has been convicted of a crime shall be admitted, subject to Rule
6         403, if the crime was punishable by death or imprisonment in excess of one year... and
     evidence that an accused has been convicted of such a crime shall be admitted if the
7         court determines that the probative value of admitting this evidence outweighs its
     prejudicial effect to the accused; ...

8

9    Fed. R. Evid. 609(a)(1).

10        Further, evidence of a defendant's prior felony conviction is subject to the time limitations

11   imposed by Federal Rule of Evidence 609(b), which states:

12        Evidence of a conviction under this rule is not admissible if a period of more than ten
     years has elapsed since the date of the conviction or of the release of the witness from
13        the confinement imposed for that conviction, whichever is the later date, unless the
     court determines, in the interests of justice, that the probative value of the conviction
14        supported by specific facts and circumstances substantially outweighs its prejudicial
     effect. However, evidence of a conviction more than 10 years old as calculated herein,
15        is not admissible unless the proponent gives to the adverse party sufficient advance
     written notice of intent to use such evidence to provide the adverse party with a fair
16        opportunity to contest the use of such evidence.

17   Fed. R. Evid. 609(b).

18        Courts consider five factors in determining whether the probative value outweighs the prejudicial

19   effect. *United States v. Cook*, 608 F.2d 1175, 1185 n. 8 (9th Cir.1979) (*en banc*), *cert. denied*, 444 U.S.

20   1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980), *overruled on other grounds in Luce v. United States*, 469

21   U.S. 38, 105 S.Ct. 460 (1984); *United States v. Alexander, et. al*, 48 F.3d 1477, 1488 (9th Cir.1995),

22   *cert. denied* 116 S.Ct. 210 (1995). The five factors are: (1) the impeachment value of the prior crime;

23   (2) the point in time of conviction and the defendant's subsequent history; (3) the similarity between the

24   past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality

25   of the defendant's credibility. *Id.*

26        As the Ninth Circuit noted in *Alexander*, "When a defendant takes the stand and denies having

27   committed the charged offense, he places his credibility at issue." *Id.* at 1489 *citing United States v.*

28   *Browne*, 829 F.2d 760, 764 (9th Cir.1987).

If the Defendant elects to testify at trial, the Government will move to address the Court out of the presence of the jury prior to making any attempt to admit the impeachment information. Depending on the nature of the defense which is endorsed by the Defendant within the trial of this matter, the Government reserves its right to argue the factors set forth herein as the Government currently has no information regarding the Defendant's theory of defense. In the event that such information is introduced at trial, a proper limiting instruction may be appropriate.

## V.
## PERTINENT LAW

### TITLE 21, UNITED STATES CODE, SECTIONS 846, 841(a)(1) AND 841(b)(1)(A)(viii), CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE METHAMPHETAMINE

A violation of Title 21, United States Code, Section 846, 841(a)(1) and 841(b)(1)(A)(viii), Conspiracy to Possess With Intent to Distribute Methamphetamine, is charged in Count One of the Fourth Superseding Indictment. The essential elements for this offense are:

First: On or about June 18, 2009, the Defendant did knowingly and intentionally combine, conspire, confederate and agree together with one or more other persons;

Second: To possess with intent to distribute 50 grams or more of actual methamphetamine to wit: **2,227.67 grams** of actual methamphetamine, a schedule II controlled substance.

### TITLE 18, UNITED STATES CODE, SECTION 924(c)(1)(A)(I), POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME

A violation of Title 18, United States Code, Section 924(c)(1)(A)(I), Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, U.S.C., Sections 924(c)(1)(A)(I), is charged in Count Two of the Fourth Superseding Indictment. The essential elements for this offense are:

First: Defendant Rodriguez committed the crime of conspiracy to possess with the intent to distribute methamphetamine as Charged in Count One of the Superseding Indictment.

Second: Defendant Rodriguez knowingly [used], [carried], [possessed], [brandished] and [discharged] a Beretta model 84BB Cal. .9 (.380) handgun bearing serial number D32470Y; and

Third: Defendant Rodriguez knowingly [used], [carried], [possessed], [brandished] and [discharged] the firearm during and in relation to the crime.

11

## TITLE 18, UNITED STATES CODE, SECTIONS 922(g)(1) AND 924(a)(2), FELON IN POSSESSION OF FIREARM

A violation of Title 18, United States Code, Section 922(g)(1) and 924(a)(2), Felon in Possession of a Firearm, is charged in Count Three of the Third Superseding Indictment. The essential elements for this offense are:

First:        On or about June 18, 2009, in the state and Federal District of Nevada; Defendant Rodriguez knowingly possessed a Beretta model 84BB 9mm handgun bearing serial number D324704;

Second:        The firearm had been shipped or transported from one state to another, foreign commerce; and

Third:        At the time Defendant Rodriguez possessed the firearm, he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

## VI.

## **EXHIBIT LIST**

The Government has filed a preliminary list of exhibits whith it intends to introduce within the trial of the above -captioned case. Those exhibits include:

1)        Audio cd containing three consensually-monitored phone calls between the Confidential Informant and "Alfonso"

2)        Transcriptions of Exhibit 1

3)        Overhead view of Primm Resort and Casino

4)        Undercover Recording of the meeting between the undercover agent (U/C), Rivera-Avalos and Fuentes-Garcia

5)        Video Recording of the narcotics meeting a subsequent vehicle convoy

6)        Seized Methamphetamine

7)        Photo of Explorer

8)        Photo of Explorer Compartment

9)        Cell Phone Recovered from the Red Ford Explorer: (626) 551-6516

10)        Cell Phone Recovered from the Red Ford Explorer: (626) 512-8646

11)        Photo of Blue S-10

12)        Cell Phone Recovered from the Blue S-10 pickup: (323) 718-7490

13) Cell Phone Recovered from the Blue S-10 pickup: (323) 718-7493

14) Photograph of Black Toyota Tundra

15) Beretta 9mm semi-automatic handgun, bearing serial number D32470Y (contained in Brown Leather Holster)

16) Magazine seized from Rodriguez at the time of the vehicle stop

17) Secondary magazine seized from Rodriguez at the time of the vehicle stop

18) Ammunition seized from Rodriguez at the time of the vehicle stop

19) Photograph: Black Toyota Tundra Interior

20) Cell Phone Recovered from the Black Tundra: (626) 485-5248

21) Cell Phone Recovered from the Black Tundra: (626) 343-2141

22) Miscellaneous documents recovered from the Black Tundra

23) Cell Phone S/W information: (626) 551-6516

24) Cell Phone S/W information: (626) 512-8646

25) Cell Phone S/W information: (323) 718-7490

26) Cell Phone S/W information: (323) 718-7493

27) Cell Phone S/W information: (626) 485-5248

28) Cell Phone S/W information: (626) 343-2141

29) Cell Phone Data Summary Chart

30) Methamphetamine Photos - Taken at Laboratory

31) Laboratory Report regarding the seized methamphetamine

32) Certified Prior Conviction Document re: Defendant Rodriguez

33) Stipulation: Certified Prior Conviction re: Defendant Rodriguez

The finalized exhibit list will be submitted to the Court on the appropriate form prior to the commencement of trial. This list simply represents a good faith list of exhibits which the Government plans to introduce within its case in chief. The Government respectfully reserves its right to modify this list at any time in order to complete the presentation of its case in chief at trial.

# VII.

## WITNESSES

At this point, the Government anticipates calling the following witnesses in its case in chief:

Christopher Cadogan, Drug Enforcement Administration Special Agent

John Gutbub, Drug Enforcement Administration Special Agent

Michael Rosenthal, Drug Enforcement Administration Special Agent

Cindy Prochnow, Drug Enforcement Administration Special Agent

Robert Martin, Drug Enforcement Administration Group Supervisor

Esther Rodrigues, Drug Enforcement Administration Interpreter

Peter Lazaro, Immigration and Customs Enforcement Special Agent

Stephen Sabot, Immigration and Customs Enforcement Special Agent

Roger Martin, Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent

Stephen Balonek, Drug Enforcement Administration Task Force Officer

Orestes Guerra, Drug Enforcement Administration Task Force Officer

James Murray, Drug Enforcement Administration Task Force Officer

Paul DeAngelis, Drug Enforcement Administration Task Force Officer

John Zidzik, Detective, Las Vegas Metropolitan Police Department

Shaun Martin, Trooper, Nevada Highway Patrol

Neil Ferguson, Trooper, Nevada Highway Patrol

Matt Moonin, Trooper, Nevada Highway Patrol

Cole Masutani, Trooper, Nevada Highway Patrol

Khushboo Narechania, LVMPD, Forensic Scientist II

Thomas L. Chittum, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives

Dallas Ryan, DEA Analyst

# VIII.

## JURY INSTRUCTIONS

The Government has submitted a set of joint proposed jury instructions to defense counsel and the parties will submit a full set of joint proposed jury instructions under separate cover per the

14

1   Court's Order.  We respectfully request that the Court give any general instructions it deems

2   necessary.

IX.

**CERTIFICATE OF READINESS FOR TRIAL**

5        The undersigned hereby certifies that they are trial counsel for the United States herein, that

6   subpoenas have been issued for all non-governmental employees who will testify herein, and that the

7   matter is ready for trial.

X.

**SERVICE AND FILING OF TRIAL MEMORANDUM**

10        The undersigned certifies that, before jury selection in this case, the original copy of this Trial

11  Memorandum will be filed in an open court and a copy served upon counsel for the defense in

12  accordance with this Court's Order governing pre-trial procedures.

    Respectfully submitted this 1st day of December, 2010.


    DANIEL G. BOGDEN
    United States Attorney
    District of Nevada


    Bradley W. Giles
    Assistant U.S. Attorney

15